UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JET SALES WEST LLC,  No. 20-12179-ta11

Debtor.

## OPINION

Before the Court is the City of El Paso's motion to dismiss this bankruptcy case as having been filed in bad faith. The Court concludes that the motion is not well taken and should be denied.

A.  Facts.

The Court finds:[1]

Debtor Jet Sales West LLC, a Nevada limited liability company, is based in Roswell, New Mexico. Lyle Byrum is Debtor's manager. Debtor has no employees. It owns four small business jets that have a combined value of about $3.7 million. The jets are registered in New Mexico. Debtor leases the jets to an affiliate, ATI Jet Inc. ("ATI"). Debtor uses the monthly lease payments, which total about $42,800, to service loans obtained to buy the jets.

ATI operates a jet charter business, chartering jets leased from Debtor and five other companies. ATI is headquartered in El Paso, Texas, although it also operates out of Dallas, Texas and Eagle, Colorado, and plans to open a location in Scottsdale, Arizona. ATI's jets are chartered for trips throughout North America, Central America, South America, and the Caribbean. Mr. Byrum is ATI's chief executive officer.

Under Texas tax law, the City of El Paso (the "City") has the authority to assess and collect ad valorem taxes on real and personal property in El Paso. Taxable personal property includes

---

[1] The Court takes judicial notice of its docket in this case and in the associated adversary proceeding. *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

commercial aircraft. The City is the collection agent for all governmental entities in El Paso county that have the authority to assess property taxes, i.e., the county, the El Paso Independent School District, and the University Medical Center of El Paso.

Debtor has been in business for more than 20 years.[2] Before 2017, the City never taxed Debtor's jets. In 2017, however, the City changed course. On or about October 10, 2017, the city issued a "2017 Property Tax Bill" to Debtor for $104,376.08. To arrive at that figure, the El Paso Central Appraisal District ("CAD") appraised Debtor's jets for $3,205,970. Using that value, the City, et al., assessed property taxes at a combined rate of 2.959709%, resulting in a tax of $94,887.35. To this a "rendition penalty" of $9,488.73 (10% of the tax) was added, per Tex. Tax Code § 22.28.

Similar taxes were assessed in 2018-2020. The following table summarizes the property taxes assessed against Debtor by the City for 2017-2020:

| Year | Appraised Value of Aircraft | Assessed Property tax (including rendition penalties) |
|---|---|---|
| 2017: | $3,205,970 | $104,376.08 |
| 2018: | $3,686,866 | $121,397.57 |
| 2019: | $2,787,800 | $ 85,684.76 |
| 2020: | $2,787,800 | $ 87,042.20 |
| Total: | | $398,500.61 |

In 2021 the City and the CAD changed course again. Instead of appraising Debtor's jets at their full value, the CAD used an allocation formula set out in Tex. Tax Code § 21.05(b), which allocates the value of commercial aircraft based on the number of "revenue departures" from Texas during the year.[3] Using the formula, the CAD calculated an appraised value $35,914, about 1.3%

---

[2] Mr. Byrum testified at Debtor's § 341 meeting that "We operated for 17 years without being taxed, and all of a sudden we got taxed."
[3] Debtor submitted an Aircraft Rendition of Taxable Property and an Application for Allocation of Value. Based on the information in those completed forms, the CAD calculated a taxable value of $35,914. Applying a total property tax rate of about 3.14% yields a tax of $1,128.93.

-2-
Case 20-12179-t11    Doc 90    Filed 12/15/21    Entered 12/15/21 15:37:25 Page 2 of 11

of the 2020 value. The City then assessed property tax on the appraised value at 3.1413%, resulting in a tax of $1,128.93. Thus, the 2021 property tax is about 1.3% of the 2020 property tax.

The approach taken by the CAD and the City in 2021 appears to be the one required by the Texas Tax Code. Had the parties followed the Texas Tax Code in 2017-2020, as they did in 2021, the taxes in those years would have been close to the 2021 figure. The Court will address elsewhere why the 2017-2020 property taxes are about 77+ times higher than they should have been.

Debtor did not pay the 2017-2020 property taxes. On July 10, 2020, the City applied in Texas state court for a tax warrant to seize the personal property of Debtor and another entity, ATI Jet Sales, LLC ("JS").[4] The state court issued the tax warrant against both entities on July 23, 2020. On September 2, 2020, sheriff's deputies arrived at ATI's El Paso hangar with the tax warrant and seized a jet owned by JS. After holding the jet for 83 days, the City released it.

Debtor filed this case on November 20, 2020. At the § 341 meeting and again at the final hearing on the City's motion to dismiss, Byrum testified that Debtor's primary reason for filing bankruptcy was the tax dispute with the City and the CAD. Specifically, Byrum testified that seizure of Debtor's jets would "cause the collapse of [Debtor]."

The City filed the motion to dismiss on April 20, 2021, alleging that Debtor filed the case in bad faith for the sole purpose of gaining a tactical advantage in the tax dispute.

B.      Motion to Dismiss for Cause Under § 1112(b).

Bankruptcy Code section 1112(b)(1) provides that, subject to "unusual circumstances," the Court must convert or dismiss a chapter 11 case, or appoint a trustee, if the movant shows "cause" to do so. Section 1112(b)(4) lists 16 grounds that constitute "cause" for dismissal. The list is not

---

[4] It is not clear why the City included JS in the application, as it was not the taxpayer. Including JS appears to have been a significant error in judgment on the part of the City employee who oversaw the drafting of the tax warrant application.

exhaustive. *In re Melendez Concrete*, *Inc.*, 2009 WL 2997920, at 3 (Bankr.D.N.M.2009), citing *In re AmriCERT, Inc.*, 360 B.R. 398, 401 (Bankr. D.N.H. 2007); *see also Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1987) (list of enumerated grounds are not exhaustive); *In re SB Props. Inc.*, 185 B.R. 198, 203 (E.D. Penn. 1995) (the "legislative history of § 1112(b) confirms that what may constitute 'cause' is non-exhaustive.").

The party seeking relief under § 1112(b) bears the burden of proving cause by a preponderance of the evidence. *Alt v. United States (In re Alt)*, 305 F.3d 413, 420 (6th Cir. 2002)); *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994); *In re Copperas Creek, LLC*, 2012 WL 3061477, at *4 (Bankr. D.N.M.).

C.  Dismissal for Bad Faith Filing.

The City argues that the "cause" for dismissal is Debtor's filing the case in bad faith. There is substantial precedent for proposition that bad faith constitutes cause under § 1112(b). *See, e.g.*, *In re Dahlstrom*, 963 F.2d 382, at *2 (10th Cir. 1992) (unpublished), citing *In re Jartran, Inc.*, 886 F.2d 859, 867 (7th Cir. 1989) ("[L]ack of good faith may constitute 'cause' under § 1112(b));" *In re Pacific Rim Investments*, *LLP*, 243 B.R. 768, 771 (D. Colo. 2000), citing *In re Nursery Land Dev., Inc.*, 91 F.3d 1414 (10th Cir. 1996) (if a chapter 11 petition is not filed in good faith, dismissal is the appropriate remedy); *In re Springs Hospitality, Inc.*, 2006 WL 2458679, at *3 (Bankr. D. Colo.) (bankruptcy case not filed in good faith is subject to dismissal); *Copperas Creek*, 2012 WL 3061477, at *4 (bad faith in filing a petition is cause for dismissal under 11 U.S.C. § 1112(b)).

"At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy." *Springs Hospitality*, 2006 WL 2458679, at *3, citing *In re Integrated Telecom Express*, *Inc.*, 384 F.3d 108, 119 (3d Cir. 2004).

Determining whether good faith exists is a fact-intensive inquiry, *In re SGL Cabron Corp.*, 200 F.3d 154, 162 (3rd Cir. 1999), requiring the court to determine where the debtor's "petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *Id*. The inquiry can include consideration of the following factors:

> (i) whether the petition serves a valid bankruptcy purpose such as by preserving a going concern or maximizing the value of the debtor's estate; (ii) whether the petition is filed merely to obtain a tactical litigation advantage; (iii) whether the debtor's financial problems involve essentially a dispute between the debtor and secured creditors that can be resolved in the pending state court litigation; (iv) whether it is a single asset case, (v) whether there are one or a very few unsecured creditors, (vi) whether there is no ongoing business or employees; (vii) whether the pre-petition conduct of the debtor has been improper; and (viii) whether the case is filed to evade one or more court orders.

*Copperas Creek*, 2012 WL 3061477 at *5.

Although no single factor is determinative, courts have held that "two inquires…are particularly relevant to the question of good faith: (1) whether the petition serves a valid bankruptcy purpose; and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *In re 15375 Memorial Corporation v. BEPCO, L.P*, 589 F.3d 605, 618 (3rd Cir. 2009) quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119-120 (3rd Cir. 2004). Forum shopping is generally viewed as a sign of bad faith. *See*, *e.g.*, *In re Springs Hospitality, Inc.*, 2006 WL 2458679 at *7 (Bankr. D. Co.) (finding bad faith in part because debtors "are seeking to litigate the same issues in the bankruptcy court that are already being litigated in the state court."

Whether a bankruptcy petition was filed in bad faith "requires the court to consider the totality of circumstances and any conceivable list of factors is not exhaustive nor does one factor create a *per se* test." *Copperas Creek*, 2012 WL 3061477, at *5, quoting *In re Sydnor*, 431 B.R. 584, 594 (Bankr. D. Md. 2010). Determining whether dismissal for bad faith is warranted is within the Court's sound discretion. *Copperas Creek*, 2012 WL 3061477, at *5, citing *Squires Motel,*

*LLC v. Gance*, 426 B.R. 29, 34 (N.D.N.Y. 2010) ("a dismissal for bad faith ... involves a bankruptcy court's exercise of equitable discretion"); *see also In re First Conn. Consulting Group, Inc.*, 254 Fed. Appx. 64, 68 (2d Cir. 2007) (unpublished) ("[w]e review the decision of a bankruptcy court to dismiss a petition for bad faith for abuse of discretion").

The Court weighs the factors identified in *Copperas Creek* and *Springs Hospitality* as follows:

1. <u>Whether the petition serves a valid bankruptcy purpose</u>. Debtor had three principal reasons for filing this case: to obtain the benefit of the automatic stay; to be able to pay any taxes it owes the City over time; and for the Court to determine its tax liability to the City. Each is a valid bankruptcy purpose.

    a. <u>Automatic stay</u>. Debtor filed this case shortly after the City seized JS's jet. The City's decision to seize a non-taxpayer's aircraft did not instill confidence. Debtor elected to avoid the risk of having its business destroyed by obtaining the benefit of the automatic stay. "It is not bad faith to avail oneself of a particular protection in the Code – such as the automatic stay – because Congress enacted such protections with the expectation that they would be used." *In re Rickabaugh*, 2021 WL 3520193, at *4 (Bankr M.D. Pa.), citing *In re Integrated Telecom Express*. Similarly, "[i]t is not bad faith to seek to gain an advantage from declaring bankruptcy–why else would one declare it?" *In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992); *see also In re PPL Enter*, 228 B.R. 339, 345 (Bank. D. Del. 1998) ("it is not 'bad faith' for debtors to file for bankruptcy in order to take advantage of a particular provision of the Code"); *In re Minick*, 588 B.R. 772, 778 (Bankr. W.D. Va. 2018) ("a debtor's decision to take advantage of [the automatic] stay does not establish bad faith").

b. <u>Pay taxes over time</u>. The Bankruptcy Code allows chapter 11 debtors to pay priority tax claims over five years from the petition date. § 1129(a)(9)(C). Debtor's schedules indicate that if it owes any substantial property taxes, it will have to pay them over time. Again, this is a common, completely legitimate use of the Bankruptcy Code.

c. <u>Tax claim determination</u>. "Section 505(a)(1) allows but does not require the Bankruptcy Court to determine a debtor's tax liabilities." *In re Beisel*, 195 B.R. 378, 379 (Bankr. S.D. Ohio 1996); *In re Rowland*, 426 B.R. 874, 875 (Bankr. D.N.M. 2010) (§ 505(a)(1) gives the bankruptcy court the power to determine tax issues but does not require the court to do so).

> Two policies underlie § 505's grant of federal authority to determine state tax matters. First, § 505 allows the prompt resolution of a debtor's tax liability, where that liability has not yet been determined prior to the bankruptcy proceeding, in the same forum addressing the debtor's overall financial condition. *See City of New York v. Fashion Wear Realty Co. (In re Fashion Wear Realty Co.)*, 14 B.R. 287, 290 (D.C.N.Y.1981) (§ 2(a)(2A)). Secondly, § 505 protects "creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest." *Northwest Beverage*, 46 B.R. at 635.

*City Vending of Muskogee*, *Inc. v. Oklahoma Tax Com'n*, 898 F.2d 122 (10th Cir. 1990); *see also Beisel*, 195 B.R. at 379 (§ 505(a)(1) affords a forum to determine the legality or amount of tax claims, which determination, if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate).

The Court has not yet ruled on whether it can and/or should determine Debtor's property tax liability to the City. That issue is before the Court in an adversary proceeding filed by Debtor against the City and the CAD, and will be dealt with separately. Nevertheless, for the purpose of ruling on the City's motion to dismiss this case, the Court finds that debtors are permitted to ask bankruptcy court to determine tax liability under § 505(a).

-7-
Case 20-12179-t11    Doc 90    Filed 12/15/21    Entered 12/15/21 15:37:25 Page 7 of 11

The Court finds that the "valid bankruptcy purpose" factor weighs against a finding of bad faith.

2. <u>Whether the petition is filed to obtain a tactical litigation advantage</u>. As discussed above, Debtor had three reasons for filing this case. One of the reasons was to ask this Court to determine Debtor's tax liability to the City. That could be construed as an attempt to obtain a tactical litigation advantage. Because of that, the factor may weigh against Debtor to some extent. The weight is not significant, however, because Debtor had other, clearly legitimate reasons for filing the case and because it is proper for debtors to ask bankruptcy courts to determine tax liability under § 505(a).

3. <u>Whether the debtor's financial problems involve essentially a dispute between the debtor and secured creditors that can be resolved in the pending state court litigation</u>. The dispute between the City and Debtor could be resolved in the pending state court/appraisal review board litigation. However, if it is ultimately determined that Debtor owes substantial back taxes to the City, Debtor will need this bankruptcy case so it can pay the taxes over time. In the meantime, Debtor needs the benefit of the automatic stay to prevent the City from seizing its aircraft. This factor weighs in favor of a finding of good faith.

4. <u>Whether it is a single asset case</u>. This factor is neutral. Debtor has four commercial aircraft, four leases, and an alleged counterclaim against the City. Thus, while this case is not a single asset case, there are relatively few assets.

5. <u>Whether there are one or a very few unsecured creditors</u>. In its bankruptcy schedules Debtor discloses seven unsecured creditors, with a total of $2,654,535 in unsecured claims.[5] That is substantial. This factor therefore weighs against a finding of bad faith.

---

[5] Debtor also listed the City as an unsecured creditor, with a claim of $487,271, but that is incorrect—to the extent the City has a valid property tax claim, it is secured by a first lien on the

-8-
Case 20-12179-t11    Doc 90    Filed 12/15/21    Entered 12/15/21 15:37:25 Page 8 of 11

6. <u>Whether there is an ongoing business and/or are employees</u>. Debtor has an ongoing business, with sales of about $42,829 per month. The factor weighs in favor of good faith.

7. <u>Whether the pre-petition conduct of the debtor was improper</u>. There is no evidence that Debtor's pre-petition conduct was improper. The factor weighs in favor of good faith.

8. <u>Whether the case is filed to evade one or more court orders</u>. Debtor filed this case first and foremost to avoid the consequences of the July 23, 2020, tax warrant issued by the Texas state court. This factor therefore weighs in favor of a finding of bad faith. The weight is slight, however, because bankruptcy cases are often prompted by court orders such as foreclosure judgments, garnishment orders, and the like. Most courts do not view the common practice of filing bankruptcy in response to such creditor collection orders as bad faith.

9. <u>Whether Debtor can meet current expenses including payment of taxes</u>. It appears that Debtor can meet all of its expenses, including taxes, with the possible exception of the back taxes claimed by the City. The factor weighs in favor of a finding of good faith.

10. <u>Whether Debtor Has Little or No Cash Flow</u>. Debtor has substantial cash flow. The factor weighs in favor of a finding of good faith.

Factors 2 and 8 weigh in favor of a finding of bad faith. Factor 4 is neutral. Factors 1, 3, 5, 6, 7, 9, and 10 weigh against a finding of bad faith. Of the most important factors (1 and 2), the first weighs heavily against a bad faith filing, while the other weighs slightly the other way.

Based on these findings, the Court concludes that Debtor did not file this case in bad faith. If Debtor's only reason for filing had been to invoke § 505(a), the result might have been different. Because Debtor needed bankruptcy relief apart from that issue, it filed the case in good faith.

D. <u>The Tax Injunction Act Does Not Apply</u>.

---

jets. *See* Tex. Tax Code § 32.05(b).

The City also argues that the Tax Injunction Act, 28 U.S.C. § 1341 (the "Act"), requires dismissal of the case. The Act provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The City asserts that, because the Act "precludes this court from interfering with the assessment, levy or collection of any tax under state law," Debtor's case is an exercise in futility and should be dismissed. The argument is not well taken; the Bankruptcy Code, including § 505(a), has been universally recognized at an exception to the Act:

> Moreover, as a matter of law, many courts—including the Third Circuit—have concluded that the TIA does not affect a bankruptcy court's subject matter jurisdiction under § 505. *See Baltimore Cnty. v. Hechinger Liquidation Trust (In re Hechinger Inv. Co. of Del., Inc.)*, 335 F.3d 243, 247 n. 1 (3d Cir. 2003) ("It is well established ... that the Tax Injunction Act does not prevent a Bankruptcy Court from enforcing the provisions of the Bankruptcy Code that affect the collection of state taxes."); *In re Plymouth House Health Care Ctr., Inc.*, Bankr. No. 03–19135F, 2004 Bankr. LEXIS 2616, at *5–8 (Bankr. E.D. Pa. Sept. 10, 2004) (holding bankruptcy court subject matter jurisdiction under 11 U.S.C.S. § 505(a) not affected by the provisions of the Tax Injunction Act). Though "the jurisdictional bar of the TIA is indeed broad," *Pontes v. Cunha (In re Pontes)*, 310 F. Supp. 2d 447, 453 (D.R.I. 2004), § 505 reflects, in clear terms, Congress' choice to allow bankruptcy courts to determine a debtor's tax liability. *See Daniels v. Cnty. of Chester (In re Daniels)*, 304 B.R. 695, 700 (Bankr. E.D. Pa. 2003) ("To the extent that a bankruptcy court must determine a debtor's tax liability in an area where such a determination may otherwise be barred by the Tax Injunction Act, the overwhelming majority view is that Congress expressly conferred jurisdiction on bankruptcy courts to do so in § 505 of the Code.").

*In re Indianapolis Downs, LLC*, 462 B.R. 104, 113 (Bankr. D. Del. 2011); *see also In re Stoecker*, 179 F.3d 546, 549 (7th Cir. 1999) (the Act only applies to injunctive remedies, not to determining the amount of state tax due). The holding in *Indianapolis Downs* is consistent with the broader view that the Act does not limit the effect of any provision of the Bankruptcy Code. *See, e.g., In re Hechinger Inv. Co. of Delaware, Inc.*, 335 F.3d 243, 247, n.1 (3d Cir. 2003) ("It is well established . . . that the Tax Injunction Act does not prevent a Bankruptcy Court from enforcing

the provisions of the Bankruptcy Code that affect the collection of state taxes."); *In re Hackler and Stelzl-Hackler*, 938 F.3d 473, 481 (3d Cir. 2019) (quoting *Hechinger*); *In re Wilshire Courtyard*, 729 F.3d 1279, 1293 (9th Cir. 2013) (quoting *Hechinger*, the 9th Circuit held that bankruptcy court jurisdiction does not violate the Act); *Adams v. State of Indiana*, 795 F.2d 27, 29 (7th Cir. 1986) (the Act does not prevent operation of the automatic stay). The City's argument is overruled.

## Conclusion

Debtor filed this chapter 11 case in good faith, seeking to stay seizure of its jets; a determination of its tax liability to the City; and the ability to pay any tax debts over time. The Act does not impair Debtor's ability to use § 505(a) or otherwise reorganize. The City's motion to dismiss will be denied by a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 15, 2021
Copies to: Counsel of record